IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PAMELA K. CONLEY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>(1) GUARDIAN SECURITY SYSTEMS, INC.,<br><br>　　　　Defendant. | Case No. 16-CV-00672-GKF-PJC<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

Plaintiff, Pamela K. Conley, for her causes of action against the Defendant, Guardian Security Systems, Inc. ("Guardian"), alleges and states as follows:

### I.   Preliminary Statement

1.　　This is an action for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), and for violation of the Family and Medical Leave Act of 1993 ("FMLA").

2.　　Plaintiff claims that during her employment with Guardian, she was sexually harassed by her direct supervisors, Danny Holland and Christopher Dearman. She claims the harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and created a hostile work environment. Plaintiff claims that Guardian is strictly liable for the sexually harassing and abusive conduct of its supervisors which resulted in a tangible employment action or is otherwise liable because it failed to promptly remedy or prevent the hostile work environment once it knew of the same. Plaintiff also claims Guardian retaliated against her on account of her exercise of legally-protected activity by terminating her employment. She further claims that Guardian interfered with her federally-protected FMLA rights and/or retaliated against her on account of her attempt to exercise those rights.

## II.     Jurisdiction

3.     This Court has jurisdiction over Plaintiff's federal claims in this action under Title VII, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(3).

4.     Plaintiff's claim under the FMLA is authorized by 29 U.S.C. § 2617.

5.     Venue is properly in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## III.     Parties

6.     Plaintiff presently is a resident of Rogers County, State of Oklahoma. At all relevant times herein, Plaintiff was an employee of Guardian within the meaning of Title VII and the FMLA.

7.     Guardian is a domestic corporation doing business in the State of Oklahoma and in this judicial district. At all relevant times herein, Guardian was an employer of Plaintiff within the meaning of Title VII and the FMLA.

8.     Guardian has employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the preceding calendar year.

## IV.     Administrative Prerequisites

9.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation.

10.     The EEOC issued its Notice of Right to Sue on August 16, 2016.

11.     Plaintiff has fulfilled all conditions precedent to the filing of this action and this action is timely filed.

## V.     Allegations Applicable to All Claims

12.     Plaintiff was hired by Guardian as an exempt Sales Representative in March

2015.

13. At all times relevant, Plaintiff was employed by Guardian at its office in Tulsa, Oklahoma.

14. At the time of her hire and continuing thereafter until March 2016, Mr. Holland was the Inside Sales Manager and Plaintiff's direct supervisor.

15. Shortly after Plaintiff's hire, Mr. Holland began to sexually harass Plaintiff. The unwelcome conduct of a sexual nature to which Plaintiff was subjected was adverse, hostile and done solely based on the fact that she is female.

16. On approximately a daily basis after Plaintiff's hire, Mr. Holland made unwelcome comments of a sexual nature about Plaintiff's appearance or body, stared at Plaintiff's breasts and body, and made gestures inviting sexual behavior.

17. In or around October/November 2015, Mr. Holland's daily harassing behavior escalated to include unwanted touching, mostly frequently in the form of back rubs. In or around October/November 2015, Mr. Holland showed Plaintiff a naked picture of himself. And the daily sexual comments continued, including instances where Mr. Holland would say what he would like to do to Plaintiff and, on one occasion, he told Plaintiff he could get her promoted if she would go with him to the Crown Plaza Hotel.

18. On or about February 18, 2016, Plaintiff emailed Richard Ginsburg, Guardian's Chief Executive Officer, regarding Mr. Holland's sexual harassment. Mr. Ginsburg called Plaintiff and notified her he would look into it.

19. In February 2016, Plaintiff began seeing a physician regarding headaches and stress at work. She was prescribed medication and discussed the possibility of FMLA.

20. In March 2016, in relationship to Plaintiff's complaints of sexual harassment, Plaintiff was interviewed by human resources ("HR") along with several co-workers.

21. Notwithstanding Plaintiff's complaints, Mr. Holland continued to sexually harass Plaintiff by his inappropriate comments, conduct, and unwelcome touching.

22. On March 25, 2016, Doug Hespe, HR Director, notified Plaintiff she would see a change the following week. Guardian subsequently announced that Mr. Holland's responsibilities as the Inside Sales Manager would change. However, Mr. Holland continued to have signatory authority over Plaintiff's sales deals.

23. Mr. Holland continued to sexually harass Plaintiff by his inappropriate comments, conduct, and unwelcome touching. For instance, at or about this time, Mr. Holland rubbed up against Plaintiff and touched her breast while the two of them were on an elevator.

24. Because of Mr. Holland's continuing harassment, Plaintiff notified HR that things with him were not getting better. She did not receive a response.

25. On or about March 29, 2016, Guardian announced Christopher Dearman would be the new sales manager.

26. Shortly after Mr. Dearman started working he began sexually harassing Plaintiff. The unwelcome conduct of a sexual nature to which Plaintiff was subjected by Mr. Dearman was adverse, hostile and done solely based on the fact that she is female.

27. On almost a daily basis after Mr. Dearman's began working for Guardian, he made unwelcome comments of a sexual nature about Plaintiff's appearance and inappropriately touched her. For instance, Mr. Dearman gave Plaintiff unsolicited/unwanted back rubs, he slapped her butt, and he grabbed her and brushed up against her backside with his front side.

28. Plaintiff reported Mr. Dearman's sexually harassing conduct to John Byrne, Guardian's Director of Sales. Mr. Byrne's response was that Plaintiff should "hang in there," and he assured Plaintiff that he would report Mr. Dearman's harassment to Jim Boots, Guardian's Chief Revenue Officer.

29. In April 2016, Mr. Byrne came to the Tulsa office and Plaintiff told him that Mr. Dearman had rubbed his genitals up against her. Mr. Byrne told Plaintiff he would have a conversation with Mr. Boots about it.

30. A week or so following Mr. Byrne's visit to Tulsa, he called Plaintiff and told her not to talk to HR and to let it be.

31. On April 18, 2016, Plaintiff had a meeting with Guardian's benefits administrator, Brittany Dorsey, regarding filing for FMLA.

32. On April 21, 2016, Plaintiff met with Ms. Dorsey, Mr. Dearman, and HR Manager, Letisha King, regarding FMLA and a work schedule change.

33. On May 2, 2016, Plaintiff requested the FMLA documents from Ms. Dorsey.

34. On the morning of May 5, 2016, Plaintiff's physician's office transmitted completed FMLA paperwork to Ms. Dorsey, and therein requested that Plaintiff work a restricted work schedule due to her serious health condition.

35. In the late afternoon on May 5, 2016, Plaintiff was summoned to a meeting with HR. Upon arrival, Plaintiff found Mr. Dearman to be present. Mr. Dearman called Plaintiff "sweetheart" and then proceeded to say that her employment was terminated.

## VI. Statement of Claims

### First Claim

### Title VII – Sex Discrimination

36. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 35 of this Complaint as though set forth at length herein and further alleges:

37. During her employment with Guardian, Plaintiff was subjected to unwelcome conduct of a sexual nature because she is female which was sufficiently severe or pervasive to create a hostile work environment that resulted in a tangible employment action.

38. The sexual harassment was carried out by Mr. Holland and Mr. Dearman both of whom had supervisory authority over Plaintiff.

39. Guardian is strictly liable for the sexually harassing conduct of Mr. Holland and Mr. Dearman that resulted in a tangible employment action.

40. Alternatively, Guardian is liable for the hostile work environment created by the conduct of Mr. Holland and Mr. Dearman because it failed to promptly remedy or prevent the hostile or offensive work environment once it knew of the same.

41. As a direct and proximate result of the sexual harassment inflicted on Plaintiff because of her sex, Plaintiff suffered injuries and damages, including but not limited to, loss of earnings and benefits, mental anguish, embarrassment, physical and emotional distress, and loss of enjoyment of life.

42. Guardian's actions toward Plaintiff were willful, wanton, and intentional, evidencing a reckless disregard for the rights of Plaintiff, thereby warranting the imposition of punitive damages.

## Second Claim

### Title VII Retaliation - Termination

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of this Complaint as though set forth at length herein and further alleges:

44. Guardian's decision to terminate Plaintiff's employment was motivated, in whole or substantial part, by its desire to retaliate against her for reporting and complaining about workplace sex harassment.

45. As a result of Guardian terminating her employment, Plaintiff suffered loss of earnings and benefits, mental anguish, embarrassment, physical and emotional distress, and loss of enjoyment of life.

46. Guardian's actions toward Plaintiff were willful, wanton, and intentional, evidencing a reckless disregard for the rights of Plaintiff, thereby warranting the imposition of punitive damages.

### Third Claim

### FMLA Violation – Interference with Rights

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint as though set forth at length herein and further alleges:

48. By its adverse actions following Plaintiff's request for FMLA leave, including but not limited to its decision to terminate Plaintiff's employment, Guardian engaged in actions constituting unlawful and willful interference with Plaintiff's substantive rights under the FMLA.

49. As a result of Guardian's actions, Plaintiff lost wages and benefits.

50. Guardian's actions were not undertaken in good faith, thereby warranting an award of liquidated damages pursuant to the FMLA.

### Fourth Claim

### FMLA Violation - Retaliation

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 of this Complaint as though set forth at length herein and further alleges:

52. Guardian's decision to terminate Plaintiff's employment was motivated, in whole or substantial part, by its desire to retaliate against Plaintiff for engaging in FMLA-protected activity.

53. Guardian's conduct toward Plaintiff constitutes unlawful and willful retaliation in violation of the FMLA.

54. As a direct and proximate result of Guardian's retaliation, Guardian has caused Plaintiff to lose wages and benefits.

55.     Guardian's actions were not undertaken in good faith, thereby warranting an award of liquidated damages pursuant to the FMLA.

**WHEREFORE**, Plaintiff, Pamela K. Conley, demands judgment against Guardian Security Systems, Inc., and requests as follows:

(1)     that this Court award Plaintiff all her actual damages, including back pay, lost past and future compensation, and lost past and future benefits in an amount to be determined at trial;

(2)     that this Court award Plaintiff damages to compensate for her mental, emotional, and physical distress and suffering sustained as a result of the unlawful conduct of Defendant;

(3)     that this Court award Plaintiff liquidated and/or punitive damages in an amount to be determined at trial;

(4)     that this Court award Plaintiff her reasonable attorney fees and costs expended in the prosecution of this action, together with prejudgment and post-judgment interest as provided by law; and

(5)     this Court award Plaintiff such other and further relief as may be deemed just and proper by the Court.

           **Respectfully submitted,**

           **SHOOK & JOHNSON, P.L.L.C.**

By:   **s/ Jonathan E. Shook**
      **Jonathan E. Shook, OBA #17343**
      **LaNae S. Marks, OBA #32034**
      **7420 S. Yale Ave.**
      **Tulsa, Oklahoma 74136**
      **(918) 293-1122 – Telephone**
      **(918) 293-1133 – Facsimile**

      **ATTORNEYS FOR PLAINTIFF**